Good morning. May it please the Court, my name is George Harides and I'm representing Petitioner Kawaljit Singh Talwar and his appeal from the Board of Immigration Appeals is denial, summary affirmance of the Immigration Judge's decision pursuant to its streamlining authority. Because the BIA streamlined this case, the Court's review is of the Immigration Judge's decision. In the present case, the Immigration Judge questioned Petitioner's political activism as a member of the All-India Sikh Student Federation as well as his religious devotion to the Sikh religion. Petitioner submitted two identity documents that appear, I believe, on page 325 of the administrative record. It is an All-India Sikh Student Federation card as well as his Indian driver's license, which Petitioner offered to establish his identity. The originals were also submitted to the Department of Homeland Security for its review. The Immigration Judge questioned these documents because she claimed that his signatures on the identity documents were different than his signature on his asylum application. Is that a factual finding to which we must defer, Mr. Harides? A factual finding, Your Honor? A factual finding. I mean, she did, as I read the transcript, say these signatures are not one and the same. Are not the same, yes, Your Honor. Is that a factual finding to which we have to give some deference if we look at the documents and agree that it doesn't look like they're the same to us either? Of course my answer is no, Your Honor. I'm looking at the documents just like you are, and I think that there is no difference between the signatures. But then, I'm not a handwriting expert, but that's really the whole point. Neither is the Immigration Judge or the DHS attorney that first raised the issue. More importantly, if this was such an issue, the DHS attorney could have submitted to the DHS, they could have submitted this identity document for analysis to confirm the validity of the signatures or the authenticity of the documents. More to the point, this finding, this issue was raised after examination had been completed in this case. The Petitioner didn't even have an opportunity to speak to this issue. That is not the principal credibility issue that I'm concerned with. How about the fact that he wasn't familiar with his own religion, not knowing about the five Ks and not knowing about what the principal holiday is? I actually dispute that, Your Honor. I think he did give credible testimony and consistent testimony about the five signs of the Sikh religion, the five Ks. As for the religion, as for the holidays, number one, I think it's telling that the Immigration Judge did not rely on any, quote-unquote, discrepancy, as pointed out by the DHS and the government in responding to its answering brief, about his knowledge of holidays. Because the only statement in the record regarding whether or not Diwali, I think, is the principal holiday that he mentioned, whether Diwali was a Sikh holiday, this statement is coming from the DHS is solely a Hindu holiday. I mean, I can sit here and tell you that it's also not only a Sikh holiday, but a significant Sikh holiday, but it's a statement coming from me. The judge asked you about the five signs, though, that he did have difficulty identifying them, did he not? I don't believe so, Your Honor. If I can point to the record, I believe it's on 86. Yes, he states them right there. Tell me what the five Ks are, sir. I'm pointing to line 9 through 11. And he goes ahead and he consistently sets forth the five signs. Now, much ado was made by the fact that he couldn't say whether or not his mother was a baptized Sikh, because if she carried these five signs, well, then he should know if she was a baptized Ramachari Sikh. Well, he did testify consistently and unequivocally on the record that his mother was a Kashtari Sikh who strictly followed the Sikh codes, and that he did not remember if she was a baptized Sikh. Now, in his assignment application, it states that she was. And he was clear on the record that that's not the sentiment that he wanted to convey. His assignment was drafted and prepared by an immigration consultant. And so he's saying this was a mistake. And the speculation by the immigration judge was, well, if you could see by looking at her whether or not she's an Amritdhari Sikh. And we're going to dispute that. We say that as a Kashtari Sikh, you can hold some if not all of the five Ks and still not have gone through the ceremony of being an Amritdhari Sikh. The only way, then, that petitioner would know if his mother was a baptized Sikh is, one, if he was present at the ceremony and saw it for himself, or two, if she told him. And he says truthfully in his hearing, throughout the course of his hearing, I don't remember, i.e., I wasn't there, I don't remember the ceremony, or I don't remember if she told me. Very consistent that maintaining that his mother strictly followed the codes and was a Kashtari Sikh but didn't know if she had gone through the ceremony, whether or not she had gone through the official ceremony of becoming a baptized Sikh. Could you address the IJ's conclusions with regard to the lack of nexus between his political activities and his arrest? I'm particularly concerned about the first arrest where your client acknowledged that there had been an explosion and that arrests were made. No, it was more of a, he testified, and maybe not artfully, but he tried to convey that he was, he and his members of his party were protesting the nuclear agenda of the Indian government because they had set off nuclear blasts. Oh, I see. So your interpretation of they made a bomb blast is that it was... They, the government. They, the government did a nuclear, I see, okay. But as far as the nexus issue, Your Honor, my first argument is that the immigration judge conflated the issues of credibility and nexus. That's my first argument. If we can look on, I believe it's page 50 of the administrative record, she says, assuming arguendo that the petitioner testified credibly, he has not established nexus. But at the same time, on the same page, page 50 of the record, she says, well, I can't accept his version of the third arrest, his account of the third arrest. Well, which is it? If you're going to question his version of how the third arrest occurred, the process by which the police entered his worksite and arrested him, then you're not assuming arguendo that he's testifying credibly. It's just simply another credibility factor, she says. Well, is it that? Or is it even if he testified truthfully, he didn't lay a sufficient factual predicate to establish the nexus? That's not necessarily inconsistent, is it? Well, you're saying burden of proof, but it sounds like credibility to me, because she says No, no, I'm asking whether, from an intellectual standpoint, it's in conflict for the fact finder to believe what the witness is saying, but nonetheless conclude that the facts are not sufficient to establish the nexus. I would agree with that, but that's not what the immigration judge did in this case. She said, I do not believe your account of the facts, because I find it implausible that the police could come to your worksite in the fashion that you've described, without any sort of tip-off, you know? Without any, and so therefore, it sounds like a credibility factor, and she's conflating the issues. However, I will say that even if we can say that she has not conflated the issues, I would I mean, in cases like these, when a judge says it's a legitimate police investigation, I don't know how that could be in this case. Clearly here, he was engaged in nonviolent protests of the Indian government and its policies against Sikhs and nuclear agenda, and it's not a coincidence that he'd be arrested after peacefully, nonviolently protesting these incidents and this agenda and policies, and would be arrested and then beaten and then called a Khalistani, called a Sikh separatist, and then be held in detention without due process, and then summarily released upon payment of a bribe. I'm going to save some time for rebuttal. Thank you, Your Honor. We'll hear from the government. Thank you. Good morning. May it please the Court, my name is Manning Evans. I represent the government in this matter. You'll also have to speak up a little bit, too, Mr. Evans. Yes, Your Honor. This petition for review raises one dispositive issue, the agency's finding that petitioner was not credible. The Court should deny the petition because there is no evidence that compels a conclusion contrary to the agency's. This Court held in cases such as Wang against INS that one significant discrepancy going to the heart of the asylum claim is sufficient to support the adverse credibility finding. The immigration judge found four such discrepancies in this case, and I'll review them. Before I do that, though, I'd like to emphasize that the immigration judge was not the only agency official to reject the asylum claims in this case. The Asylum Office referred the application to Immigration Court, and the BIA later summarily affirmed the immigration judge's findings in this matter. The first discrepancy... You know, we've never, we've never, asylum officers refer on a different standard. That's not something we review. I understand, Your Honor, and it's actually not clear on the record on what basis it was referred. Regarding the discrepancy between the, whether or not the mother was baptized, I would emphasize that Respondent, Petitioner repeatedly adopted his declaration during the course of the Immigration Court proceedings. And not only that, but at page 314 of the administrative record, you have the preparer's certification that this document, that the declaration was read back to the Petitioner in his own language. So the claims that he didn't understand what was in his declaration really fall flat. I have a little bit of difficulty understanding why the fact of her baptism or not baptism has anything to do with the heart of his claim, given that it's a different sect. Because I've got to tell you, you know, my, I was thinking about this this morning. I couldn't tell you whether my mother was baptized or not. We went to church every Sunday as a Protestant religion, but if you ask me, I would assume so. But if you ask me now, I have no idea. I understand your concern. Why is it any different? And why does it go to whether I have faith or not or whether this person has faith or not, based on what, a fact that occurred in his mother's life when, when he wasn't born? Well, Your Honor, he told us during the proceedings that it was important to his claim. He made a point of saying that attending the Gurdwara with his mother was a way of showing his adherence to the Sikh faith. And in fact, the record also He didn't, but I don't think he varied from that. I mean, he, his attendance with his mother was something that was consistent. The only thing inconsistent was, was baptism. And I grant you it's inconsistent, but tell me why you think it really goes to the heart of the claim. Because I think that it shows that someone who claims that they are very devoted to the Sikh faith is not aware of things that they should be aware of. And I would also point out at page 137 in the record, the State Department has previously said that devotion to Sikhism is important in these kinds of claims. So the Respondent had an important motivation here to show that he was truly a Sikh. The second contradiction that the immigration judge relied upon was whether or not he saw his father being politically active. He said that he is not He was only six years old then, wasn't he? Yes, Your Honor. He admitted that he was six or seven. And so, of course, he said initially that he had not seen his father or he didn't remember seeing his father. And when he was confronted with the inconsistency in his declaration, then he began to change his testimony and said, oh, well, I saw him sometimes, and then I saw him two times, and then I saw him four times. So he was willing to change his testimony to conform to his declaration. And I think that's an important point supporting the immigration judge's decision. The third contradiction that Not the fact that a six-year-old wouldn't really pay much attention to it. Well, I think that's true, Your Honor. I mean, you can say, well, what would a six-year-old remember? But at the same time, this is someone who, again, claims very devout devotion both to the Sikhism and to his Federation membership. And the relationship between the father and the son seems fairly close. The father's declaration, the third one at page 323 in the record, says that the father says my son inherited my politics. So we have a close bond here, and yet the son is vacillating on whether or not he saw his father. And he's willing to change his testimony to conform to his declaration. I think inheriting his politics would make a close bond. Well, I think that the Petitioner would like us to believe that it would, Your Honor. I'm not in a position to say. Well, I'm just questioning the reason why you say there was a close bond. Well, the idea of inheriting politics, I think it could only be, well, it's not a matter of genetics, I don't think, although there's nothing in the record to contradict me.  Well, I think that his politics clearly lie at the heart of his claim. Right, but only his father's politics, if he can't remember exactly whether he saw his father do something. Well, he talked about his devotion to his own political views, and he seemed to have inherited these from his father. And then his inability to remember whether or not he saw his father being politically active. And his willingness to change his testimony on that point, I think, do go to the heart of the claim, because it all concerns his politics, and whether or not he actually had these beliefs. The fourth inconsistency that the immigration judge relied upon was the inconsistent signatures. And I would respond to Judge Holman's question, is this a factual finding? I think clearly it is. I think when a judge looks at two documents, each with purportedly the same signature of one person, and sees that these signatures are dramatically different, that is a factual finding. How do you respond to the argument that the petitioner was not afforded the opportunity to rebut that? Now, normally on our case law, if the IJ or the BIA is going to make an adverse credibility finding on a particular factor like this, we've held that you have to give the petitioner an opportunity to rebut that. How do you address that? Yes, Your Honor. Going through the record very carefully on that point, and I could not find that he'd actually been asked to explain why a different signature appears on his Federation membership card. But I'm not sure that the Court's case law actually talks about inconsistencies in documents as opposed to inconsistencies in testimony. And that's really all I can say, I think, to that point. I would emphasize also there is a case, the Kumar decision, where the Court talked about whether or not there's a need for expert testimony regarding handwriting analysis. That case is not applicable here. In that case, the immigration judge had compared one character in a number, I believe, and concluded that based on that one character there was a difference, and therefore one document was forged. Here we have a radically different signature that I think is apparent to any layperson, and particularly to someone with some expertise of looking at I'd encourage the Court to look at the Federation membership card. In the lower right-hand corner you'll see that there's a space that says member, and there's a signature that doesn't look anything like any of the signatures on the asylum application. And he repeatedly signed the asylum application. So there were certainly plenty of exemplars for the immigration judge to look at. Judge Hugg, you mentioned that there was concern in the record over the Petitioner's identification of Diwali as an important Sikh holiday. And I'll agree with Petitioner's counsel that there actually was not evidence in the record talking about what kind of holiday this was. But I think what's important at that point, and this is a page 89 of the record, is that at one point the Petitioner is willing to call Vaisakhi and Diwali as almost the same holiday. He tries to elide them. And he's trying I believe, and I believe that the immigration judge had in mind, that the inconsistency identified at the asylum office was important, and he's trying to cover it up. And he eventually admits that in fact they're separate holidays. So you really have to wonder why is he raising Vaisakhi Day in connection with Diwali? I think that there are other important inconsistencies in the record as well. For example, he said after his first arrest that he was taken to the Sadar police station when in fact his declaration says he was taken to the CIA staff at Jalandhar. That's a distinction that even he recognizes later in his testimony. Granted, the agency didn't point to that inconsistency, but I think it also supports the agency's conclusion based on the inconsistencies that they did cite. I'd also point out the school leaving certificate at page 304 of the record that provides information about the Petitioner's education. It's entirely inconsistent with the information that he provided in his asylum application. That would be at pages, I believe it's 308 and 318 of his asylum application. If there are no other questions, the government would ask that the Court deny the record. Mr. Chavins. You have about a minute and a half for rebuttal. Your Honors, I'd like to point to page 91 of the record regarding the inconsistency about whether or not he saw his father be active. It's clear that on page 91 on line 15 is the question that the Petitioner did not understand the question initially, and instead of having it explained to him, it was simply repeated. And it was not restated, it was simply repeated. And it's clear on the succeeding pages through page 93 of the record that it clearly appears that the Petitioner thought the question was, did you see your father join? And in fact, on page 93, he even says that on line 5, that's what I don't remember that, when he joined. So it's clear that initially he believed the question was, did you see your father join? Of course, being a young child around the age of six or seven, he wouldn't have remembered that. But then when the question was restated at that point, he confirmed and clarified his testimony, yes, I saw my father busy with other party workers two to four times. And I think that resolves any inconsistency. When the question was finally restated, he clarified his testimony and testified consistently with his assignment application. Next I'd like to make one more point about the signatures. These are signatures that are, these are English signatures. These are not his signatures. These are the signatures of the Petitioner. And I'm not saying that the Petitioner did not sign both of these documents. I'm saying that the Petitioner did not sign both of these documents. Our case law does permit a lay jury or a lay fact finder to make that kind of a determination, does it not? If it does. It's not required that you have an expert offer the opinion. Yes, Your Honor. But in this case, the judge doesn't even say how they're different. I don't see a difference. I think the immigration judge should at least set forth how they're different, at the very least. But if we've got the documents and we have his, what more do we need? We can look at exactly the same thing that the judge looked at. I'm not convinced. And I would feel very bad for this Petitioner if his case were denied on that basis. That's all I can say about that. And if I have any more time, or should I? I think we have your argument in hand. Thank you very much. The case is here to be submitted. Thank you both for your arguments. It's tough to do all this in ten minutes. But you covered the important points very well, both of you.
judges: Hug, Thomas, Tallman